USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1370 STEPHEN S. CROOKER AND PAMELA A. CROOKER, Plaintiffs, Appellees, v. PAUL METALLO, ET AL., Defendants, Appellants. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Frank H. Freedman, U.S. District Judge] ___________________ ___________________ Before Breyer, Chief Judge, ___________ Selya and Boudin, Circuit Judges. ______________ ___________________ Stephen S. Crooker and Pamela A. Crooker on brief pro se. __________________ _________________ Scott Harshbarger, Attorney General, and William J. Meade, _________________ _________________ Assistant Attorney General, on brief for appellants. __________________ September 29, 1993 __________________ SELYA, Circuit Judge. The issue presented in this SELYA, Circuit Judge. ______________ appeal is whether the defendants, parole officers, violated a clearly established constitutional right of which a reasonable person would have known when, in August 1989, they arrested plaintiff Stephen S. Crooker at his home for sundry parole violations. The officers conducted a protective sweep incident to the arrest. Stephen Crooker and his wife, Pamela, brought suit, pursuant to 42 U.S.C. 1983, alleging that the search violated their Fourth Amendment rights. Particularly, they allege that, during the sweep, an officer lifted their mattress from its box spring and looked between the two.1 The district court denied the defendants' claim of qualified immunity. The defendants appeal. We reverse. When defendants executed the arrest warrant for Stephen Crooker, they "possesse[d] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer[s] in believing," that the Crookers' home harbored an individual, one Vincent Tondryk, who "pos[ed] a danger to the officer[s] or others." Maryland v. Buie, 494 ________ ____ U.S. 325, 327 (1990) (citations omitted); see also Michigan ________ ________ ____________________ 1. The defendants deny that, in fact, the mattress was lifted from the box spring. That factual dispute remains unresolved. Our determination of the issue of qualified immunity does not depend on resolution of that dispute as we assume arguendo that the mattress search took place in the ________ manner asserted by the plaintiffs. -2- v. Long, 463 U.S. 1032, 1049-50 (1983); Terry v. Ohio, 392 ____ _____ ____ U.S. 1, 21 (1968). This reasonable belief permitted a protective sweep of the premises, i.e., "a quick and limited ____ search of premises, incident to [the] arrest and conducted to protect the safety of police officers or others." Buie, 494 ____ U.S. at 327; see also United States v. Curzi, 867 F.2d 36, 39 ________ _____________ _____ n.2 (1st Cir. 1989). The defendants, therefore, were justified in searching the Crookers' home for Tondryk and looking in places where Tondryk might have been hiding. Although the district court so found, it nevertheless denied the defendants' claim of qualified immunity on the ground that the search between the mattress and box spring was not within the proper confines of a protective sweep because it would not be reasonable to expect a person to be hiding in those environs. Thus, the court reasoned, the search was not permissible in the absence of a search warrant. It is true that Buie speaks of a protective sweep ____ "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Buie, 494 U.S. at ____ 327. The facts of Buie, however, did not present the issue ____ of the permissibility of a limited search for accessible weapons (which it is not unreasonable to expect might be hidden between a mattress and box spring) conducted simultaneously with the search for a dangerous confederate of the arrestee. Thus, we cannot say, even today, that Buie ____ -3- forecloses the possibility that such a scenario is lawful. Indeed, the Second Circuit recently determined that a protective sweep can include a search for weapons within easy ___ reach of an individual whom the officers have reasonably concluded is dangerous. See United States v. Hernandez, 941 ___ _____________ _________ F.2d 133, 137 (2d Cir. 1991); see also United States v. _________ ______________ Lopez, 989 F.2d 24 (1st Cir. 1993) (upholding a weapons _____ search where the police had ample basis for believing that a dangerous weapon was lodged close by, that the defendant might not be acting alone, and that the premises were not secure), petition for cert. filed, (U.S. Jun. 23, 1993) (No. ________________________ 93-5032); cf. United States v. Irizarry, 673 F.2d 554, 559 n* ___ _____________ ________ (1st Cir. 1982) (suggesting that a search for weapons would be unjustified where all persons in a hotel room were under control and the agents knew that no one else was on the premises). In analyzing a claim of qualified immunity, moreover, we are concerned with clearly established constitutional or statutory rights of which a reasonable officer would have known at the time he took action, here, in August 1989. See, ____ e.g., Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 ____ ____________________ ____________ (1st Cir. 1992) (explaining that "the touchstone of an inquiry into qualified immunity is whether the state actor's behavior was objectively reasonable, as a matter of federal law, at the time and under the circumstances then -4- obtaining"); Amsden v. Moran, 904 F.2d 748, 751 (1st Cir. ______ _____ 1990) (similar), cert. denied, 498 U.S. 1041 (1991). The ____________ protective sweep in Hernandez occurred, like the instant _________ sweep, in 1989, and, significantly, that court drew its reasoning not only from Buie, but also from Long and Terry - ____ ____ _____ two opinions of the Court that predated 1989 and dwelt on the balance that must be struck between the need for law enforcement officers to protect themselves and others and the invasion which a search entails. See Long, 463 U.S. at 1049- ___ ____ 52; Terry, 392 U.S. at 23-27; see also United States v. _____ _________ ______________ Elkins, 732 F.2d 1280, 1285 (6th Cir. 1984) ("Once having ______ entered the premises, the agents were then required to secure ________ all persons therein and to make a protective sweep for the weapons Elkins was known to favor, for the safety of all concerned.") (Emphasis supplied). In sum, it may well be that, during the course of an otherwise justified protective sweep for a dangerous individual, thought to be in hiding, the Fourth Amendment permits a simultaneously conducted limited search of places which might contain a weapon readily accessible to that as- yet-undiscovered individual. We need not, and do not, reach that question in this case, however, for the operative inquiry on qualified immunity is not whether the defendants actually abridged the plaintiffs' constitutional rights, but whether defendants' conduct was objectively unreasonable, -5- given the constitutional understandings then current. See ___ Anderson v. Creighton, 483 U.S. 635, 640 (1987); Davis v. ________ _________ _____ Scherer, 468 U.S. 183, 190 (1984); Quintero de Quintero, 974 _______ ____________________ F.2d at 228; Amsden, 904 F.2d at 751. The uncertainty that ______ shrouds the question here means, a fortiori, that the ___________ defendants, in 1989, violated no clearly established Fourth Amendment right of which reasonable officers would have known when they searched between the mattress and box spring. After all, a state actor is neither expected to carry a crystal ball nor "to determine the manner in which the law's grey areas will be clarified and defined." Borucki v. Ryan, _______ ____ 827 F.2d 836, 838 (1st Cir. 1987). Finally, we believe it is important to note that nothing approaching a full scale search occurred in this case.2 Stephen Crooker acknowledged that the officers' sweep of the premises, including the basement, took only five to ten minutes, and that the officers spent only "a couple of minutes" in the bedroom. Apart from the search between the mattress and box spring, nothing in the record suggests that the officers were rummaging aimlessly about. This is persuasive proof that safety, not a search for evidence, was ____________________ 2. We think it is useful to contrast what transpired here with the search conducted in Chimel v. California, 395 U.S. ______ __________ 752 (1969). That foray lasted between 45 minutes and an hour, id. at 754, and comprised "a full-blown search of the ___ entire house for evidence of the crime for which the arrest was made." Maryland v. Buie, 494 U.S. at 336. ________ ____ -6- the impetus for, and guiding force behind, the protective sweep at issue here. The Court has taught that a protective "sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Buie, 494 U.S. at 335-36. The sweep conducted by ____ the defendants in this case fulfilled these criteria. We need go no further.3 Because the record, read as it must be, in the light most flattering to the plaintiffs, see ___ Quintero de Quintero, 974 F.2d at 227-28, shows conclusively ____________________ that the defendants are entitled to qualified immunity, the district court erred in denying their motion for summary judgment. Reversed. _________ ____________________ 3. In view of the result that we reach, we need not address defendants' asseveration, premised on cases such as Griffin _______ v. Wisconsin, 483 U.S. 868 (1987) and United States v. _________ ______________ Cardona, 903 F.2d 60 (1st Cir. 1990), cert. denied, 498 U.S. _______ ____________ 1049 (1991), that their status as parole officers, coupled with Stephen Crooker's status as a parolee, created a diminished expectation of privacy and broadened the officers' entitlement to conduct a warrantless search. -7-